COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Huff, Raphael and Lorish
Argued at Arlington, Virginia


OSMAN OSMAN

v.        Record No. 1416-21-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
FEBRUARY 14, 2023

UPON A REHEARING

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

(John W. Pickett; Pickett Law Group, PLLC, on briefs), for
appellant.  Appellant submitting on briefs.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on briefs), for appellee.


Osman Osman ("appellant") was convicted by a jury in Fairfax County Circuit Court (the

"trial court") of four counts involving violations of a protective order, two counts of felony

abduction, and one count of misdemeanor domestic assault against a family member.  Appellant

appealed those convictions on multiple grounds, including the assertion that the Code § 18.2-47

charge of abducting his child, J.O., should have proceeded as a misdemeanor rather than a

felony.  By a unanimous panel decision issued October 25, 2022, this Court affirmed all of

appellant's convictions except for the felony abduction of J.O., which was reversed and vacated.

The Commonwealth timely petitioned for reconsideration, seeking review of only the

ruling that the trial court erred in permitting the Commonwealth to prosecute appellant's

abduction of J.O. as a felony rather than a misdemeanor.  The panel granted the petition by order

dated November 22, 2022.  Despite the limited scope of the Commonwealth's petition, the

November 22 order withdrew the panel's original opinion in its entirety and vacated the mandate.

Having reconsidered its prior holding, the panel now re-states and clarifies its ruling as to the single petitioned issue and reinstates the balance of the original opinion from October 25, 2022. Thus, this Court finds that the trial court erred by permitting the Commonwealth to prosecute appellant's abduction of J.O. as a felony, rather than a misdemeanor, in direct contradiction to the interlocking provisions of Code §§ 18.2-47(D), 16.1-253.1, and 16.1-253.2. Appellant's felony abduction conviction for J.O. is therefore reversed and vacated. Finding no other error, this Court affirms appellant's remaining convictions.

## I. BACKGROUND

In accordance with well-settled principles of appellate review, this Court considers the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, this Court discards any evidence presented by appellant that conflicts with the Commonwealth's evidence and regards as true all credible evidence favorable to the Commonwealth and all reasonable inferences drawn therefrom. *Gerald*, 295 Va. at 473; *Parks v. Commonwealth*, 221 Va. 492, 498 (1980).

As of March 24, 2018, appellant was married to Ellina Letyvska and they had one child together, identified herein by the initials J.O. Due to ongoing physical and emotional abuse by appellant, Ms. Letyvska left the marital home in February 2018 and sought a temporary preliminary protective order for herself and J.O. The Fairfax County Juvenile and Domestic Relations District Court (the "JDR court") issued an ex parte preliminary protective order on February 22, 2018 ("February PPO"), under Code § 16.1-253.1, based on Ms. Letyvska's representations that she believed appellant was a threat to her life and safety.

- 2 -

The February PPO prohibited appellant from having any contact with the protected parties—Ms. Letyvska and J.O.—and from being within five hundred feet of them at all times. A full hearing on the February PPO was scheduled for March 8, 2018, at which appellant requested more time to retain and consult with counsel. In granting appellant's request, the JDR court issued an extended preliminary protective order ("March PPO") and scheduled a full hearing on that order for March 27, 2018. The terms of the March PPO remained the same as those in the February PPO, including the provision prohibiting appellant from having any contact with either Ms. Letyvska or J.O.

Appellant violated the March PPO on March 24, 2018, at approximately 12:00 p.m. in the parking lot next to Gold's Gym in Chantilly, Virginia (the "gym"). On that day, Ms. Letyvska took J.O.—who was two and a half years old at that time—to the gym with her in the morning and parked her car in the lot next to the gym. At approximately 12:00 p.m., Ms. Letyvska left the gym and walked towards her car while holding J.O. in her left arm. As she opened the passenger-side door to put down her bags, appellant appeared behind her and demanded that she come with him. When Ms. Letyvska did not immediately comply, appellant began dragging and pushing her towards the open back door of a Ford SUV (the "SUV") parked perpendicularly approximately five to six feet behind Ms. Letyvska's car.

At trial, Ms. Letyvska testified that the SUV was not the vehicle appellant usually drove and that she had never seen that SUV before. She tried to resist appellant by falling to the ground to make it harder for appellant to get her into the SUV. While Ms. Letyvska was sitting on the ground under the open door with her back against the SUV's rear tire, appellant began hitting Ms. Letyvska on the back of her head and neck with a closed fist. Ms. Letyvska was still holding J.O., who was screaming and crying in her arms. Appellant then began trying to pull J.O. away from Ms. Letyvska.

This commotion drew the attention of David Sobeck, who was also a member of the gym as well as an off-duty special agent with the Pentagon Force Protection Agency. After leaving the gym and getting into his car in the parking lot, Mr. Sobeck saw Ms. Letyvska holding J.O. and sitting next to the left rear tire of the SUV with her back pressed against the car. Appellant stood over her, gesticulating wildly with his arms. Concerned by what he saw, Mr. Sobeck got out of his car and walked toward Ms. Letyvska and appellant.

When he was approximately twenty to thirty feet away, Mr. Sobeck saw that Ms. Letyvska was "completely distraught," and he heard her screaming to call 9-1-1 because she needed help. Mr. Sobeck also heard the child in Ms. Letyvska's arms crying. Mr. Sobeck continued to approach, but when he was only approximately five to seven feet away, appellant pulled a firearm out from under his sweatshirt and pointed it at Mr. Sobeck, saying, "Get the fuck out of here or I'll fucking shoot you." At appellant's trial, Ms. Letyvska testified that she, too, saw appellant pointing the gun at Mr. Sobeck. Appellant claimed at trial that he only brandished a "BB gun" at Mr. Sobeck.

Regardless, Mr. Sobeck retreated to his car and called 9-1-1. Appellant then resumed trying to force Ms. Letyvska into the SUV. Before appellant succeeded, another bystander drove by and indicated that the police were on their way. In response, appellant got into the driver's seat of the SUV and drove away without Ms. Letyvska and J.O. Shortly after appellant left the gym, the police arrived in the parking lot and interviewed both Ms. Letyvska and Mr. Sobeck. Evidence later presented at trial, including appellant's own testimony, established that appellant had rented the SUV from Avis Budget on March 23, 2018, with a return date of March 24, 2018, but appellant instead abandoned the vehicle on that date and fled to New York after his encounter with Ms. Letyvska and J.O. in the gym parking lot.[1]

---

[1] Avis Budget later reported the SUV as stolen.

In response to the events of March 24, 2018, Detectives Susan Anderton and T.L. Hulse executed a search warrant of appellant's home on March 29. Although appellant's parents were in the home at that time, appellant was not present and did not return.

Six months later, on September 20, police officer Leonardo Buenaventura received a dispatch regarding an abandoned vehicle. Upon arrival, he saw the vehicle was a Ford SUV with tags that had been reported stolen. He found a United States permanent resident card in the center console with appellant's name, which was linked to an "outstanding warrant for a criminal case." Officer Buenaventura immediately passed this information along to Detectives Anderton and Hulse who then executed a search warrant on the SUV. The evidence presented at appellant's trial proved that this SUV was the same one appellant used on March 24, 2018.

Detective Anderton testified at appellant's trial that the back passenger seats of the SUV were folded down and two black zip ties were secured around the child safety seat restraint bar in the backseat area. She described the zip ties as being fashioned in a loop such that a person's wrist could fit through it and the zip tie could then be pulled tighter. Detective Anderton further testified that the gym-size duffel bag found behind the driver's seat contained diapers, men's clothing, and assorted papers, including a photocopy of appellant's Bulgarian passport and United States permanent resident card. Appellant admitted at trial that the items found in the SUV, including the duffel bag with clothing and diapers as well as the permanent resident card and other documents, belonged to him.

Through the ongoing police investigation, Sergeant Josh Moser, a detective from the fugitive task force, discovered evidence that appellant was staying in New York City. He and Detective Hulse traveled to New York where, with the assistance of United States Marshals, they arrested appellant on November 27, 2018. Appellant was extradited to Virginia in December 2018 and held without bond on charges of abduction, assault, and violating a protective order.

The JDR court scheduled a preliminary hearing on appellant's charges for January 14, 2019, which was continued until February 21, 2019, on the joint request of both parties. Appellant then made two additional requests for adjournment on February 21 and March 28. The JDR court finally held the preliminary hearing on May 3, 2019, at which it found probable cause to believe appellant had committed a felony and certified the case to the trial court.

The parties first appeared before the trial court on May 23, 2019, and the case was continued to May 31, 2019, for selection of a trial date and for appointment of new counsel at appellant's request. On May 31, 2019, the trial court set a trial date of September 23, 2019. Appellant then requested a continuance on September 9, 2019, due to the unavailability of two defense witnesses. The trial was rescheduled for January 13, 2020, via a calendar control order ("CCO"), in which defense counsel initialed and checked the box for a waiver of speedy trial.

On December 30, 2019, appellant again sought a continuance for additional time to review discovery materials provided by the Commonwealth. The trial was rescheduled for March 30, 2020, via a CCO issued on January 8, 2020, in which defense counsel again checked the waiver of speedy trial box.

The Supreme Court of Virginia issued its first emergency order relating to the COVID-19 pandemic on March 16, 2020, in which it restricted nonemergency proceedings "including jury trials, subject to a defendant's right to a speedy trial." Order Declaring a Judicial Emergency in Response to COVID-19 Emergency, 1-2 (Va. Mar. 16, 2020).[2] The Court subsequently issued a series of additional orders extending the judicial emergency and tolling statutory speedy trial

---

[2] Additional references in this opinion to the Supreme Court's first order and subsequent related orders are to "emergency order" or "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'").

deadlines.[3]  *See* EDOs of Mar. 27, 2020, to May 27, 2022.[4]  In September 2020, the Court explicitly clarified that the tolling provisions remained in effect despite approval of any circuit court's "plan to restart jury trials" and would continue to remain in effect "unless amended by future order."  EDO of Sept. 11, 2020, at 1-2.  The Court issued no such amendment prior to appellant's trial in July 2021.  In fact, the Court's fortieth emergency order extending the judicial emergency and tolling statutory speedy trial deadlines was issued on May 27, 2022.  *See* EDO of May 27, 2022 ("While the Speedy Trial Act, Va. Code § 19.2-243, has its own tolling provisions, speedy trial act deadlines continue to be tolled by this order during the ongoing Period of Judicial Emergency, currently through June 22, 2022.").

In response to the Court's March 16, 2020 emergency order, the trial court issued a memorandum on the same day in which it suspended all trials for thirty days and set all cases within that period, including appellant's case, for status on the criminal term day docket on May 21, 2020.  Appellant filed a motion on March 25, 2020, objecting to this continuance and asserting his right to a speedy trial.  The trial court heard arguments as to this matter on March 30, 2020, and appellant agreed with the trial court's determination that the five months allotted for prosecution under Virginia's Speedy Trial Act (codified in Code § 19.2-243) did not expire until April 15, 2020.  Accordingly, the trial court scheduled the case for a bench trial on April 6, 2020, and granted appellant's request for substitution of counsel.

On April 1, 2020, trial was again rescheduled, via a CCO, to June 1, 2020, at the request of appellant who waived speedy trial for that period.  The Commonwealth requested an

---

[3] The Court later clarified that its orders tolling speedy trial deadlines referred only to a defendant's statutory, rather than constitutional, right to a speedy trial.  *See* EDO of May 1, 2020, at 2.

[4] All of the Court's judicial emergency orders for the COVID-19 pandemic can be found on the Court's website at the following link: https://www.vacourts.gov/news/items/covid/scv_emergency_orders.pdf.

adjournment on May 27, 2020, and the case was continued to August 3, 2020, via a CCO.  At the pre-trial status hearing on July 30, 2020, appellant asked for new counsel and invoked his right to a jury trial.[5]  The trial court advised appellant that his request for a jury trial meant that his case would likely not be heard until February 2021 due to the backlog of trials caused by the COVID-19 pandemic.  Appellant acknowledged that he understood, and the trial court adjourned the case to August 3, 2020, for selection of a trial date.  In doing so, the court explicitly noted that "speedy trial is tolled during this time until [the case is] set for a new date in February."  Appellant did not object.

The parties appeared before the trial court on August 3, 2020, and selected a trial date of February 1, 2021.  Appellant explicitly waived speedy trial for the entirety of that adjournment.  On October 1, 2020, the trial court informed the parties that the February trial date needed to be changed because pandemic-related court congestion had "wiped out February 1st already with other long cases."  Due to the parties' scheduling conflicts, the trial court set trial to begin on May 5, 2021, and appellant did not object to that date.

On March 26, 2021, the trial court held a hearing on a number of pre-trial motions, including the Commonwealth's motion in limine to admit prior bad acts of appellant at trial.  Specifically, the Commonwealth sought to introduce evidence of appellant's past physical and verbal abuse of Ms. Letyvska.  After hearing arguments from both parties, the trial court determined that the evidence was admissible to prove motive and intent, as well as the prior relationship between appellant and Ms. Letyvska, and that the probative value of such evidence "outweighs any prejudicial effect."  The trial court also indicated that it would issue a limiting instruction advising the jury to only consider such evidence for those specified purposes.

---

[5] The trial court denied appellant's request for new counsel.

Based on a joint continuance request issued via a CCO on April 19, 2021, appellant's trial was rescheduled to June 28, 2021. Only a few days later, on April 23, the parties appeared before the trial court at the Commonwealth's request for another adjournment. The Commonwealth informed the trial court that Ms. Letyvska and a "key detective" were unavailable to testify on June 28, 2021. In response to the trial court's questioning, the Commonwealth explained that they had previously "reach[ed] out" to the witnesses to ascertain availability but had not received confirmation in advance of agreeing to the June 28 trial date. Over appellant's objection, the trial court adjourned the case to July 28, 2021.

On July 27, 2021, appellant filed a motion to dismiss based on speedy trial grounds, and the trial court heard arguments from the parties on July 28, 2021. The trial court ultimately held that neither appellant's statutory nor constitutional right to a speedy trial had been violated. With regard to the statutory right, the trial court found that most of the continuance motions "were either on the defendant's request or a joint request" and that the emergency orders relating to the COVID-19 pandemic tolled the speedy trial deadlines under Code § 19.2-243 from March 16, 2020, to the current date. The trial court then held that appellant's constitutional right to a speedy trial was not violated because:

> [l]ooking at the factors, the length of delay is not unreasonable due to the reasons for the delay, mainly that the defendant needed to get counsel and be prepared for trial today. And also because of COVID and the pandemic reasons for the delay. So based on those reasons the Court does not find this case is prejudiced.

After the trial court denied appellant's motion to dismiss, the case proceeded to trial by jury.

In accordance with the trial court's March 26, 2021 decision regarding the admissibility of appellant's prior bad acts, the Commonwealth offered testimony at trial from Ms. Letyvska about the abuse she experienced from appellant during their marriage. Specifically, Ms. Letyvska testified that appellant came to her place of employment several times and "made a

- 9 -

huge scene" by screaming and cursing at her in public. She also testified that the first time appellant physically assaulted her was in 2016 when he came home in the middle of the night and Ms. Letyvska could not get J.O. to stop crying. In particular, appellant pulled Ms. Letyvska's hair and punched her in the face. Similar incidents occurred several times throughout the first two years of J.O.'s life whenever Ms. Letyvska could not stop J.O. from crying during the night. Ms. Letyvska further described one incident in February 2017 where appellant blamed her for J.O. being sick and started punching her in the face and choking her while she was holding J.O. in one arm.

After the Commonwealth finished presenting its case, appellant moved to strike all charges based on a claim that the Commonwealth failed to prove appellant's identity. Appellant also challenged the sufficiency of the evidence regarding his abduction of Ms. Letyvska by specifically alleging there was no "proof that he intended to deprive her of her liberty" and her testimony was not credible. The trial court disagreed, finding that Ms. Letyvska's testimony was not "inherently unreliable or incredible as to not allow the credibility of the witness to be decided by the Jury." As such, "there is evidence of asportation or the inability of [Ms. Letyvska] to leave," so the abduction charge (Count 1) "goes to the jury."

Next, appellant argued that the abduction of J.O. was improperly charged as a felony rather than a misdemeanor under Code § 18.2-47(D) because appellant was J.O.'s parent and subject to contempt for violating the March PPO. The trial court again disagreed, finding that "based on *Diehl v. Commonwealth*[, 9 Va. App. 191 (1989)]," the felony abduction charge regarding J.O. "can go forward." Appellant then presented his own evidence at trial, after which

- 10 -

he renewed the motion to strike based on the same grounds as previously stated.[6]  For the same reasons, the trial court denied the motion.

Consistent with its pre-trial ruling, the trial court issued a limiting instruction to the jury on August 3, 2021, advising them that they could only consider the evidence of appellant's prior bad acts "as evidence of the defendant's motive and/or conduct and feelings toward the victims and relations between them for which he is on trial and for no other purpose."  Later that same day, the jury returned guilty verdicts for all charges, convicting appellant of two counts under Code § 18.2-47 for felony abduction of Ms. Letyvska and J.O., one count of misdemeanor domestic assault under Code § 18.2-57.2, and four counts related to violating the March PPO under Code § 16.1-253.2.  Those last four convictions were based on appellant's violation of the March PPO in the following specified ways: (1) by stalking, (2) by committing assault and battery, (3) by violating the order's no-contact provision, and (4) by violating the order while armed with a deadly weapon.

On November 19, 2021, the trial court sentenced appellant to an aggregate sentence of twenty years' incarceration.[7]  Appellant appealed his convictions on the following grounds. First, appellant challenged the trial court's admission of his prior bad acts.  Second, appellant argued that the Code § 18.2-47 charge of abducting J.O. could only have proceeded as a misdemeanor offense under subsection (D) of the statute, rather than as a Class 5 felony under

---

[6] On August 3, 2021, defense counsel renewed his "previous motion to strike for all the grounds and reasons stated before, with the additional arguments regarding the violation of the protective order while in possession of a deadly weapon."  Appellant does not raise that latter argument in this appeal.

[7] Appellant was sentenced to the following periods of incarceration: five years for abducting Ms. Letyvska (Count I), ten years for abducting J.O. (Count V), two years for violating the March PPO while armed with a deadly weapon (Count III), one year for violating the March PPO by stalking (Count VII), one year for violating the March PPO by committing assault and battery (Count VIII), six months for assault and battery (Count IV), and six months for violating the March PPO's no-contact provision (Count IX).

subsection (C). Third, appellant alleged that the period of delay between his arrest and eventual trial violated both his statutory and constitutional rights to a speedy trial. Fourth, and finally, appellant claimed that the evidence presented at trial was insufficient to sustain the felony conviction for abducting his wife because the abduction was merely incidental to the assault of his wife.

On October 25, 2022, this Court issued an opinion affirming all of appellant's convictions except for the felony abduction of J.O. Based on a review of the record and the relevant statutes, this Court concluded that appellant was both a parent of J.O. and subject to contempt of court for violating the March PPO. Those facts rendered appellant's abduction of J.O. a misdemeanor offense under the provisions of Code § 18.2-47(D) and thus precluded the Commonwealth from pursuing a charge of felony abduction under the other subsections of Code § 18.2-47. Consequently, the trial court erred in denying appellant's motion to strike regarding the felony abduction charge of J.O. The Commonwealth subsequently petitioned for a rehearing on that single ruling, which the panel granted on November 22, 2022, in an order that withdrew the October 2022 opinion in its entirety and vacated the mandate.

For the reasons below, this Court now reinstates all the holdings from the original opinion and expounds on why appellant's conviction for felony abduction of J.O. demands reversal.

## II. ANALYSIS

In challenging his convictions on appeal, appellant alleged four reversible errors by the trial court. After considering the merits of appellant's assignments of error, this Court affirms the trial court's judgments in part but reverses and vacates appellant's felony conviction for abducting J.O. This Court declines to consider the merits of appellant's final assignment of error because it was not properly preserved for appellate review.

A.  Appellant's First Assignment of Error: The Trial Court Erred in Permitting the Commonwealth to Admit Evidence of Appellant's Prior Acts of Abuse at Trial

Appellant argues that the trial court should have prohibited the Commonwealth from admitting evidence of appellant's prior physical and verbal abuse of Ms. Letyvska because the prejudicial effect of such evidence outweighed any probative value.

"Given the 'broad discretion' of a trial judge over evidentiary matters," this Court reviews a trial court's decision regarding the admission or exclusion of evidence under a "deferential abuse-of-discretion standard." *Thomas v. Commonwealth*, 44 Va. App. 741, 753 (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 752 (2004)), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).  This Court cannot substitute its own judgment for that of the trial court and must instead determine "whether the record fairly supports the trial court's action." *Clark v. Commonwealth*, 73 Va. App. 695, 705 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  This deference extends to the trial court's "responsibility for balancing the competing considerations of probative value and prejudice" when considering the admission of evidence. *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990)); *see also Kenner v. Commonwealth*, 299 Va. 414, 424 (2021).

As a general rule, evidence of a defendant's prior bad acts or other crimes is inadmissible "to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b).  However, such evidence may be admissible to prove motive and intent, but *only if* the trial court determines that "the legitimate probative value of such proof outweighs its incidental prejudice." *Id.*; *see Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019).

Evidence of prior bad acts, including domestic violence, is also admissible "when it 'shows the conduct or attitude of the accused toward his victim[,] establishes the relationship between the parties,'" or "'is connected with or leads up to the offense for which the accused is

- 13 -

on trial,'" so long as the probative value outweighs any prejudicial effect. *Conley v. Commonwealth*, 74 Va. App. 658, 670-71 (2022) (first quoting *Kenner*, 299 Va. at 424; then quoting *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988)). This Court has also found that even abuse from a year prior to the charged offense "was probative to show the defendant's motive and intent in committing the alleged acts" and to "prove the relationship between the defendant and his victims." *Callahan v. Commonwealth*, 8 Va. App. 135, 141 (1989).

Under these prevailing standards, the trial court did not abuse its discretion in admitting evidence of appellant's prior bad acts. As the trial court explained, those "prior assaults against the victim do have probative value to prove motive and intent and also a prior relationship in this particular case and that outweighs any prejudicial effect." The trial court also issued a limiting instruction to the jury advising them that they could consider such testimony only for the permitted purposes of motive, intent, and prior relationship. *See Brooks v. Commonwealth*, 73 Va. App. 133, 148 (2021) ("The danger of unfair prejudice can also be mitigated by an instruction to the jury that limits their consideration of other crimes evidence to its proper purposes and application to each offense charged.").

Accordingly, this Court affirms the trial court's judgment that evidence of appellant's prior bad acts and other crimes was admissible.

### B. Appellant's Second Assignment of Error: The Trial Court Erred in Denying Appellant's Motion to Strike the Felony Abduction Charge for J.O.

Next, appellant argues that the trial court should have granted his motion to strike the felony abduction charge as to J.O., under Code § 18.2-47. Specifically, appellant argues that he could only have been indicted pursuant to Code § 18.2-47(D), which makes a parent's abduction of their child punishable as a misdemeanor rather than a felony under certain circumstances. The Commonwealth's argument on reconsideration is twofold: that appellant did not meet the criteria for misdemeanor abduction under subsection (D) and that construing Code § 18.2-47 to require

- 14 -

misdemeanor prosecution of appellant leads to the "absurd result" of "greatly decrease[d] . . . punishment for parents who violently abduct their children at gunpoint after having been prohibited *any* contact with a child."

For the following reasons, this Court finds that because appellant's abduction of J.O. meets the criteria of Code § 18.2-47(D)—appellant is J.O.'s parent and the abduction was punishable as contempt for violating the March PPO—the trial court erred in denying appellant's motion to strike the felony abduction charge under Code § 18.2-47.

Standard of Review

Issues of statutory construction and application are questions of law reviewed *de novo* on appeal. *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021).

"When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Haefele v. Commonwealth*, 75 Va. App. 591, 599 (2022) (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). In doing so, this Court "must presume that the General Assembly chose, with care, the words that appear in a statute, and [it] must apply the statute in a manner faithful to that choice." *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016). As such, "courts are required to apply the plain meaning of statutes, and . . . are not free to add language, nor to ignore language, contained in statutes." *SIGNAL Corp. v. Keane Fed. Sys., Inc.*, 265 Va. 38, 46 (2003). Criminal statutes must be "strictly construed against the Commonwealth" while still "'giv[ing] reasonable effect to the words used' in the legislation." *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020) (quoting *Johnson v. Commonwealth*, 37 Va. App. 634, 639 (2002)).

"When a statute, as written, is clear on its face, [this Court] will look no further than the plain meaning of the statute's words." *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 455 (2022) (quoting *Commonwealth, Dep't of Tax'n v. Delta Air Lines, Inc.*, 257 Va. 419,

426 (1999)). "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998); *see also Sorrell v. Commonwealth*, 74 Va. App. 243, 247 (2022) ("Generally, [the] '[w]ords and phrases used in a statute' are interpreted in light of 'their ordinary and usually accepted meaning[s].'" (second and third alterations in original) (quoting *Mejia v. Commonwealth*, 23 Va. App. 173, 176 (1996))). And "[t]he rules of statutory and regulatory 'interpretation argue against reading any legislative enactment in a manner that will make a portion of it useless, repetitious, or absurd.'" *J.V. v. Stafford Cnty. Sch. Bd.*, 67 Va. App. 21, 38 (2016) (quoting *Jones v. Conwell*, 227 Va. 176, 181 (1984)).

Therefore, "'[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language,' unless 'applying the plain language would lead to an absurd result.'" *R.J. Reynolds Tobacco Co.*, 300 Va. at 455 (first quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021); then quoting *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016)).[8] "A statute's plain language leads to 'absurd results' when it produces illogical or anomalous results," *Emmanuel Worship Ctr. v. City of Petersburg*, 300 Va. 393, 405 (2022), that render the statute "internally inconsistent or otherwise incapable of operation," *City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021).

<u>Appellant's Abduction of J.O. Cannot Be Prosecuted as a Class 5 Felony Under Code § 18.2-47 Because He Meets the Criteria in Subsection (D)</u>

To understand the import and application of Code § 18.2-47(D), this Court first recognizes that Code § 18.2-47 "effectively combines the common law offenses of kidnapping, abduction, and false imprisonment 'into one statutory felony.'" *Clanton v. Commonwealth*, 53

---

[8] "A statute is considered ambiguous if the text can be understood in more than one way or refers to two or more things simultaneously or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Morgan v. Commonwealth*, ___ Va. ___, ___ (Dec. 29, 2022) (quoting *Baker v. Commonwealth*, 284 Va. 572, 576 (2012)).

Va. App. 561, 567 (2009) (en banc) (quoting *Walker v. Commonwealth*, 47 Va. App. 114, 120 (2005)).[9] As a result, subsection (A) provides that a person is guilty of "abduction" when "by force, intimidation or deception, and without legal justification or excuse," he "seizes, takes, transports, detains or secretes another person with the intent to deprive" them of their personal liberty or "withhold or conceal" them "from any person, authority or institution lawfully entitled" to their charge. Code § 18.2-47(A). Thus, in any prosecution brought pursuant to Code § 18.2-47, the Commonwealth must prove each of the elements of "abduction" as defined in the statute.[10] *See Diehl*, 9 Va. App. at 194 ("As applied to the facts contained in this record, we construe [Code § 18.2-47] to authorize the prosecution of a custodial parent for abduction of his child."); *Taylor v. Commonwealth*, 31 Va. App. 54, 65 (1999) (en banc), *aff'd*, 260 Va. 683, 688 (2000) (recognizing that Code § 18.2-47 contains no categorical exception for parents other than what subsection (D) already provides).

Assuming the Commonwealth meets its burden, subsection (C) provides, in relevant part, the following default rule regarding punishment: "Abduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony." Code § 18.2-47(C). Subsection (D), however, immediately follows that pronouncement by providing such alternate punishments for two specific types of parental abductions. First, "[i]f an offense under subsection A is committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending, the offense shall be a Class 1 misdemeanor in addition to being punishable as contempt

---

[9] Subsection (C) even explicitly provides that "[t]he terms 'abduction' and 'kidnapping' shall be synonymous in this Code." Code § 18.2-47(C).

[10] A person may also be deemed guilty of "abduction" under subsection (B) if "by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to subject him to forced labor or services." Code § 18.2-47(B). That provision, however, is inapplicable to the case at hand.

of court."[11]  Code § 18.2-47(D).  Second, if, under those same facts, the parent removes the child from Virginia's borders, then the abduction "shall be a Class 6 felony in addition to being punishable as contempt of court."  *Id.*

It should go without saying that the unambiguous language used in both subsection (C) and subsection (D) renders the penalties provided in each mutually exclusive to the other.  As a result, a plain reading of Code § 18.2-47 leads to a single interpretation: a parent who abducts their child in violation of Code § 18.2-47 may be punished for a Class 5 felony under subsection (C) *only if* such abduction cannot be punished as contempt of court in any other pending proceeding.  Thus, where a parent's abduction of the child is "punishable as contempt of court in any proceeding then pending," the parent can only be punished under subsection (D) for either a Class 1 misdemeanor or Class 6 felony depending on whether the parent removed the child from Virginia.  Code § 18.2-47(C)-(D); *see Taylor*, 31 Va. App. at 65 n.6 ("[A] parent, whose conduct falls within Code § 18.2-47 and is punishable as contempt of court in any proceeding then pending, may only be convicted of either a Class 6 felony or a Class 1 misdemeanor.").

1.  Appellant's Violation of the March PPO is Punishable as Contempt

Appellant's abduction of J.O. falls squarely within subsection (D) of Code § 18.2-47 because the crime was "punishable as contempt of court" in a pending proceeding.[12] Specifically, at the time of the abduction, the March PPO prohibiting any contact whatsoever

_____

[11] This Court notes that the plain and ordinary meaning of "punishable," as used here, contemplates the legal capacity to punish, as a possibility rather than an outcome.  In the specific context of Code § 18.2-47(D), "punishable" means that, under existing legal authority, a parent's abduction of their child *could be punished* as contempt of court, regardless of whether the Commonwealth chooses to pursue such charges.  The Commonwealth here could have charged appellant with contempt of court under Code § 16.1-253.1(C) for violating the March PPO, but its choice not to do so cannot be used as a basis to now argue that appellant was not "punishable" for contempt and thus not subject to the provisions of Code § 18.2-47(D).

[12] Neither party disputes the proven facts that appellant was the biological father of J.O. and did not remove J.O. from Virginia.

- 18 -

between appellant and J.O. was in full effect and pending a full hearing in the JDR court. That PPO was issued pursuant to Code § 16.1-253.1, subsection (C) of which states that "[e]xcept as otherwise provided in § 16.1-253.2, a violation of the order shall constitute contempt of court."

The Commonwealth, nevertheless, argues that appellant's violation of the PPO was not punishable as contempt because the phrase "[e]xcept as otherwise provided" had the singular effect of replacing the contempt penalty in subsection (C) with any of the misdemeanor or felony penalties provided in § 16.1-253.2. This Court disagrees and finds that the phrase in question has no inherent effect on its own other than to direct the reader's attention to Code § 16.1-253.2 for further interpretation. As explained below, the plain language of § 16.1-253.2—as a corollary to § 16.1-253.1(C)—provides misdemeanor and felony penalties as additive, rather than substitutes, to § 16.1-253.1(C)'s contempt penalty in a limited set of circumstances where a defendant has violated a protective order in a specific way.[13]

The very first words in the first two subsections of Code § 16.1-253.2—under which appellant was charged and convicted—state "[i]n addition to any other penalty provided by law." Code § 16.1-253.2(A)-(B). Thus, unlike the mutually exclusive relationship between subsections (C) and (D) of Code § 18.2-47, the penalties provided in Code § 16.1-253.2(A)-(B) are, by their plain and unambiguous language, *additional* to "any other penalty provided by law."[14] By

[13] Code § 16.1-253.1 applies exclusively to "[p]reliminary protective orders in cases of family abuse," whereas § 16.1-253.2 provides penalties for "[v]iolation[s] of provisions of protective orders" issued not only under § 16.1-253.1 but also §§ 16.1-253.4, -278.14, and -279.1 as well as subsection (B) of § 20-103, all of which address different types of protective orders issued under different circumstances and procedures.

[14] This Court notes a distinction between the words "other penalty" and "other offense." "[A] common canon of statutory construction [provides] that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." *Ali v. Commonwealth*, 75 Va. App. 16, 30 (2022) (quoting *Ricks v. Commonwealth*, 290 Va. 470, 478 n.1 (2015)). As evidenced by the language used in other statutes, the General Assembly applies the phrase "in addition to any other penalty" in a different context than the phrase "the provisions of this section shall not preclude prosecution under any

reading Code §§ 16.1-253.1 and -253.2—as intended by the legislature and evidenced from the language used—it is abundantly clear that the "contempt of court" penalty in § 16.1-253.1(C) constitutes an "other penalty provided by law" for which appellant may be held accountable *in addition to* the misdemeanor and felony penalties laid out in § 16.1-253.2(A)-(B). *See Hsiu Tsai v. Commonwealth*, 51 Va. App. 649, 654 n.4 (2008) ("While Code § 16.1-253.2 establishes that violation of a protective order, under these facts, is a Class 1 misdemeanor, a violation of a protective order is [also] contempt of court.").[15]

Under subsection (A) of Code § 16.1-253.2, a person who violates "a provision of the protective order" that prohibits contact "with the allegedly abused person," "further acts of family abuse," the commission of a criminal offense, or trespass upon specified property, "is guilty of a Class 1 misdemeanor." And any person who violates any provision whatsoever of a protective order, "while knowingly armed with a firearm or other deadly weapon, . . . is guilty of a Class 6 felony" under subsection (B). Because punishment for any one or more of those violations is "in addition to any other penalty provided by law," appellant's abduction of J.O. in violation of the March PPO is punishable both as contempt under Code § 16.1-253.1(C) and as a Class 1 misdemeanor and/or Class 6 felony under subsections (A) and (B) of § 16.1-253.2.

That the Commonwealth can choose whether to pursue that contempt penalty in addition to the penalties provided by § 16.1-253.2 does not render § 16.1-253.1(C) meaningless. Nor is § 16.1-253.1(C) rendered redundant by the additional penalties provided in § 16.1-253.2, none of

---

other statute." While the former affirmatively provides an additional punishment for a single offense, the latter merely clarifies that the Commonwealth is not limited to prosecution under a single statute but rather may bring charges of other crimes and offenses in different sections of the Virginia Code. *See e.g.*, *Alston v. Commonwealth*, 274 Va. 759, 774 (2007).

[15] *See* Ronald J. Bacigal, *Family Offenses,* in *Criminal Offenses and Defenses* (2022) (noting that a violation of a preliminary protective order for family abuse under Code § 16.1-253.1 carries "specific criminal consequences" including "contempt (§ 16.1-253.1.C) *and* a class 1 misdemeanor requiring an active sentence (§ 16.1-253.2)" (emphasis added)).

which include contempt of court. To the contrary, both statutes must be read together to give "reasonable effect to every word" and to the clear legislative intent. *Porter v. Commonwealth*, 276 Va. 203, 230 (2008); *see Eastlack v. Commonwealth*, 282 Va. 120, 125-26 (2011) ("[S]tatutes concerning the same subject are to be read together, and construed, wherever possible, so as to avoid conflict between them and to permit each of them to have full operation according to their legislative purpose.").

Moreover, nothing in either of those statutes precludes the Commonwealth from charging appellant for other criminal offenses under different sections of the Virginia Code.[16] *See George v. Commonwealth*, 51 Va. App. 137, 144 (2008) ("The General Assembly . . . is fully capable of drafting statutes containing language that limits the Commonwealth's options for prosecution."). The only relevant limitation here is provided in Code § 18.2-47, under which appellant may not be prosecuted for a Class 5 felony abduction of his child because he is punishable for contempt of court pursuant to Code § 16.1-253.1(C).[17] Code § 18.2-47(C)-(D).

Adopting the Commonwealth's forced and contradictory interpretation of these statutes—that the "in addition to" language in Code § 16.1-253.2 does not apply to § 16.1-253.1(C) because the latter's use of "except as otherwise provided" causes § 16.1-253.2's penalties to completely supplant § 16.1-253.1(C)'s contempt penalty—would frustrate the legislative purpose of each, both individually and jointly. When interpreting a statute, it is the responsibility of this

---

[16] The Commonwealth explicitly agrees that it is not precluded from charging appellant under both Code § 16.1-253.2 and § 18.2-47. In fact, the Commonwealth did charge appellant with multiple counts under both statutes, for which he was convicted and sentenced.

[17] Although Code § 16.1-253.1(C) explicitly gives courts the statutory authority to punish violations of a PPO as contempt, such authority necessarily exists within the court at all times as "an inherent power of self-defense and self-preservation" that "may be regulated but cannot be destroyed." *Winters v. Winters*, 73 Va. App. 581, 591 (2021) (quoting *Carter v. Commonwealth*, 96 Va. 791, 816 (1899)); *see also Laing v. Commonwealth*, 205 Va. 511, 515 (1964) ("When one shows by his conduct a deliberate and studied effort to disobey a valid order of a court, he subjects himself to punishment for contempt.").

Court to give effect to the words selected by the legislature, not to graft a desired outcome or intent onto unambiguous language. *See Miller & Rhodes Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) ("We must determine the legislative intent by what the statute says and not by what we think it should have said." (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963))). This Court, therefore, declines to adopt the Commonwealth's self-serving interpretation and instead finds that the penalties in Code § 16.1-253.2(A)-(B) do not replace the penalty for contempt of court under § 16.1-253.1(C).[18]

The effect of the phrase "in addition to any other penalty provided by law" is not altered or negated by the language "except as otherwise provided," because it is plainly additive rather than limiting in nature—equating to "as well as" rather than "instead of." *See George*, 51 Va. App. at 145 ("In construing statutes enacted by the General Assembly, we are not permitted to read into the statute limiting language that does not exist."). Accordingly, because appellant's abduction of J.O. is punishable as contempt of court for violating the March PPO, his prosecution for abduction under Code § 18.2-47 is restricted to a Class 1 misdemeanor by subsection (D).[19] *See Thompson v. Commonwealth*, 73 Va. App. 721, 728 (2021) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 10 (2019)).

---

[18] This Court notes that the General Assembly knows how to write express language to exclude contempt as a possible punishment, including in the context of protective orders. For example, Code § 18.2-60.4(A) states: "Any person who violates any provision of a protective order issued pursuant to § 19.2-152.8, 19.2-152.9, or 19.2-152.10 is guilty of a Class 1 misdemeanor. Conviction hereunder shall bar a finding of contempt for the same act." The absence of such language in Code § 16.1-253.1 and other Virginia Code provisions specifically relating to family abuse protective orders speaks directly to the legislature's intent to retain the penalty of contempt for violations of such orders. *See also, e.g.*, Code § 19.2-129 ("Nothing in this chapter [governing bail and recognizances] shall interfere with or prevent the exercise by any court of the Commonwealth of its power to punish for contempt, except that a person shall not be sentenced for contempt and under the provisions of § 19.2-128 [willful failure to appear] for the same absence.").

[19] Although the Commonwealth wields "the discretion to decide under which of several applicable statutes the charges shall be instituted," it cannot bootstrap a Class 5 felony abduction

- 22 -

2. This Court's Interpretation of the Interplay Among Code §§ 18.2-47, 16.1-253.1, and 16.1-253.2 Does Not Produce "Absurd Results"

In its final attempt to preserve appellant's felony conviction for the abduction of J.O., the Commonwealth claims that this Court's interpretation of Code § 18.2-47 and the protective order statutes "leads to an absurd result" and renders the statutes meaningless and ineffective.[20] However, none of the Commonwealth's cited cases or hypothetical examples supports that claim.

Starting with the question of intent, the Commonwealth asserts that "[t]he clear legislative intent of Code § 18.2-47(D) was to decrease the culpability of parents who violate orders like custody orders, but to ensure that individuals who violate protective orders are punished more harshly." Although not entirely incorrect, that statement is a gross oversimplification and ultimately does not support the Commonwealth's conclusion that Code § 18.2-47(D) is not applicable to appellant.

On its face, Code § 18.2-47(D) draws no distinction between custody orders and protective orders, and nothing in the plain language used suggests the intent to do so. *See, e.g.*, *Jacobs v. Wilcoxson*, 71 Va. App. 521, 526 (2020) ("[W]e look at the words of the statute to determine legislative intent."). The phrase "any proceeding then pending" naturally encompasses both custody/visitation orders and protective orders, any violation of which is punishable as contempt for violating a court order. *See Marvin v. Marvin*, 51 Va. App. 619,

---

charge under Code § 18.2-47 simply by choosing not to also charge appellant with contempt. *George*, 51 Va. App. at 143 (quoting *In re Robert F. Horan*, 271 Va. 258, 264 (2006)). Appellant remains "punishable" for contempt regardless of whether he is formally charged or ultimately punished for such. Code § 18.2-47(D).

[20] The fact of the matter is that the effect of the plain language of all three of these statutes creates a result in this case that the Commonwealth dislikes—the inability to charge appellant with a Class 5 felony abduction despite being able to bring a plethora of other charges, including a Class 6 felony under Code § 16.1-253.2(B), for the conduct constituting abduction of J.O. But that does not give this Court the authority to rewrite an unambiguous statute that does not lead to inconsistent results. Although the legislature may choose to amend these statutes if it sees fit to address the Commonwealth's concerns, this Court may not do so.

- 23 -

622-23 (2008) (holding father in contempt "for violating the amended visitation order" when he "returned the minor child a day late" without mother's permission).[21] But it does not stop there; instead, this expansive language contemplates the existence of *any pending proceeding* for which a defendant's commission of parental abduction could be punished as contempt of court.

The legislature's selection of that particular language was neither a mistake nor oversight. Rather, it demonstrates the intentional choice to create a less severe punishment for parents whose technical "abduction" of their child in violation of a court order is nevertheless committed through comparably minor and non-violent means, such as a parent picking their child up from school in violation of a custody order or no-contact provision in a protective order. Code § 18.2-47(D) accomplishes that goal.

Furthermore, the fact that a parental abduction committed at gunpoint in violation of a protective order—as occurred in this case—remains a misdemeanor under the language of Code § 18.2-47(D) does not inherently render that result absurd or make the statute internally inconsistent. *See Taylor*, 31 Va. App. at 65 n.6 ("[T]he legislative decision to enact a law that supports the orderly resolution of custody disputes by imposing lesser penalties on a party who has elected judicial resolution of the issue, while establishing greater penalties for a party who uses a self-help approach, . . . cannot be said to defy logic."). The Commonwealth's attempt to persuade this Court otherwise is unconvincing.

---

[21] In *Leisge v. Leisge*, 224 Va. 303 (1982), the Supreme Court upheld father's civil contempt conviction for refusing to return his minor child to her mother in violation of a custody order. Although the Court drew a distinction between civil and criminal contempt, it acknowledged that "many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison." *Id.* at 308 (emphasis omitted) (quoting *Steelworkers v. Newport News Shipbldg.*, 220 Va. 547, 550 (1979)). Thus, a defendant need not have "intended to affront the dignity of the court" in order to be convicted of civil contempt and penalized for violating a court order involving child custody. *Id.*

For instance, the Commonwealth offers the following hypothetical as an example of an "absurd result" created by this Court's statutory interpretation:

> a parent who otherwise is permitted to have contact with his child but who does not strictly comply with a custody order and takes the child into Maryland for dinner is guilty of a Class 6 felony, but a parent who abducts a child at gunpoint after having been prohibited from having any contact with the child . . . is only guilty of a Class 1 misdemeanor.[22]

That example, however, overlooks two key points. First, the parent who takes their child to dinner in Maryland could be found guilty of a Class 6 felony under Code § 18.2-47(D) *only if* the Commonwealth proved the elements of abduction listed in subsection (A)—to wit, the parent's use of "force, intimidation or deception," lack of "legal justification or excuse," and "intent to deprive" the child "of his personal liberty" or "withhold or conceal him from any person, authority or institution lawfully entitled to his charge." Code § 18.2-47(A).

Absent those elements, it seems unlikely that the Commonwealth would be able to prove "abduction" under its hypothetical set of facts, let alone that it would choose to bring abduction charges under Code § 18.2-47 against a parent. *Cf. Williams v. Commonwealth*, No. 0018-22-1, slip op. at 7-8 (Va. Ct. App. Dec. 13, 2022) (finding appellant guilty of felony abduction of his biological child despite "the absence of a court order altering his rights as a natural parent"

---

[22] Even if subsection (D) only applied to parents who are subject to custody orders, as the Commonwealth contends, this Court finds no reason to distinguish a parent's violation of a custody order from their violation of a protective order when the offending conduct for either involves the use of a firearm or significant violence. The means by which the abduction is committed are far more important for punishment purposes than merely the type of court order defendant's conduct incidentally violated. Thus, the Commonwealth's argument that the March PPO prevents the application of Code § 18.2-47(D) to appellant appears strained in light of its implied acquiescence to a Class 1 misdemeanor for the same conduct if the March PPO had instead been a custody order.

because he removed the child at gunpoint, after physically assaulting the mother, and "with the intent to withhold her from [her mother]").[23]

Second, the statement that a parent, like appellant, who abducts their child at gunpoint in violation of a no-contact protective order "is only guilty of a Class 1 misdemeanor," is a misleading overgeneralization. Although the plain language of Code § 18.2-47(D) would shield such parent from a Class 5 felony charge for the abduction itself, it does *not* preclude the Commonwealth from bringing additional related charges for the possession and use of a firearm or for the violation of the protective order. Indeed, the supposed anomalous results between violent and non-violent abductions that this example is meant to highlight are in fact addressed and balanced by other parts of the Virginia Code. *See Taylor*, 31 Va. App. at 65 n.6 ("[T]he legislature may enact laws that reflect and advance the public policy it deems important." (citing *Long v. Commonwealth*, 23 Va. App. 537, 543 (1996))).

In particular, Code § 16.1-253.2 demonstrates the General Assembly's interest in increasing both the severity and quantity of penalties, as warranted by the facts, for violations of protective orders, without undermining the intended effects of Code § 18.2-47(D).[24] *See Thompson*, 73 Va. App. at 728 ("[R]elated statutes should be considered together and 'harmoni[zed]' if necessary as part of the interpretive process." (second alteration in original) (quoting *Amonett*, 70 Va. App. at 10))). As relevant to this part of the discussion, Code § 16.1-253.2(A) reads:

---

[23] Unpublished opinions, although not binding, may be cited as "informative" and "considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); Rule 5A:1(f).

[24] This Court also notes that, under Code § 18.2-49.1, the Commonwealth may seek a similar set of increased punishments for any person who "knowingly, wrongfully and intentionally" commits "a clear and significant violation of a court order respecting the custody or visitation" of a child. Code § 18.2-49.1(A)-(B).

In addition to any other penalty provided by law, any person who violates any provision of a protective order . . . involv[ing] a provision of the protective order that prohibits such person from (i) going or remaining upon land, building, or premises; (ii) further acts of family abuse; or (iii) committing a criminal offense, or which prohibits contacts by the respondent with the allegedly abused person or family or household members of the allegedly abused person as the court deems appropriate, is guilty of a Class 1 misdemeanor.

That subsection goes on to provide increased penalties—such as "a mandatory minimum term of confinement" and a Class 6 felony—for second and subsequent offenses "when either the instant or one of the prior offenses was based on an act or threat of violence." Code § 16.1-253.2(A).

Subsection (B), which also begins with the phrase "[i]n addition to any other penalty provided by law," provides that "any person who, while knowingly armed with a firearm or other deadly weapon, violates any provision of a protective order . . . is guilty of a Class 6 felony." That penalty applies the first time a defendant engages in the prohibited conduct.

Based on the plain language of this statute, if a parent's abduction of their child violates a protective order in one of the ways specified by subsections (A) or (B) of Code § 16.1-253.2, the Commonwealth may charge them with the associated penalties stated in those subsections *in addition to* misdemeanor abduction under Code § 18.2-47(D).[25] Indeed, appellant was charged and convicted of a Class 6 felony under Code § 16.1-253.2(B) and a Class 1 misdemeanor under § 16.1-253.2(A), which the Commonwealth neglects to mention.[26]

The additive nature of Code § 16.1-253.2 is extremely important to the interpretation of Code § 18.2-47(D) because it demonstrates the General Assembly's acknowledgement of the

---

[25] Neither party disputes this Court's interpretation that the language "[i]n addition to any other penalty provided by law" in subsections (A) and (B) permit the Commonwealth to charge appellant under Code § 16.1-253.2 *and* Code § 18.2-47.

[26] Appellant was also convicted of two Class 6 felony charges under subsection (C) of Code § 16.1-253.2 for stalking Ms. Letyvska as well as committing assault and battery against her in violation of the existing PPO.

need for alternate ways to punish more harshly parental abductions that involve violence or firearms while still maintaining a lower threshold for parents who abduct their children within Virginia in less egregious ways, regardless of whether the abduction violates a custody order or a protective order. As sought by the Commonwealth, the felony "punishment for parents who violently abduct their children at gunpoint after having been prohibited *any* contact with a child" is in fact accounted for by Code § 16.1-253.2(B), under which appellant was convicted and sentenced. And even the penalties for violations contained in Code § 16.1-253.2(A), which do not require use of a firearm or other weapon, increase in severity for parents who repeatedly violate a protective order.

Accordingly, this Court agrees with appellant's observation that the Commonwealth "has offered no legal authority" to support its proposed interpretation of the statutes at issue, "other than classifying [this Court's interpretation] as an 'absurd result.'" This Court rejects that classification and instead finds that its interpretation of the statutes does not render the statutory framework internally inconsistent or otherwise incapable of operation. As explained above, appellant's abduction of J.O. was punishable as contempt of court for violating the March PPO issued under Code § 16.1-253.1. Consequently, appellant's abduction of J.O. in violation of Code § 18.2-47 could only have proceeded as a Class 1 misdemeanor under the provisions of subsection (D). Thus, the trial court erred in denying appellant's motion to strike the charge of felony abduction of J.O.[27]

---

[27] In denying appellant's motion to strike, the trial court based its decision on the Commonwealth's reference to *Diehl*, 9 Va. App. 191. In that case, this Court found Code § 18.2-47(D) inapplicable because, prior to Diehl's act of abduction, there was no proceeding pending against him for which he could have been punished for contempt. In particular, Diehl was not subject to any protective order or other court mandate at the time he abducted his child. Those facts are inapposite to the case at hand where appellant was subject to the March PPO—a pending proceeding scheduled for full hearing in the JDR court on March 27, 2018, any violation of which could have been punished as contempt of court under Code § 16.1-253.1(C)—at the

C.  Appellant's Third Assignment of Error:  The Trial Court Erred in Denying
     Appellant's Motion to Dismiss for Violating His Rights to a Speedy Trial

Appellant also argues that the trial court should have granted his motion to dismiss all the

charges against him because the Commonwealth violated both his statutory and constitutional

rights to a speedy trial.  This Court rejects that claim and affirms the trial court's judgment that

neither appellant's statutory nor constitutional speedy trial rights were violated.

As explained further below, "the statutory right to a speedy trial and the constitutional

right to a speedy trial are separate, though related, rights that utilize different frameworks and

focus on different elements."  *Brown v. Commonwealth*, 75 Va. App. 388, 406 (2022).  However,

because both statutory and constitutional speedy trial challenges present "a mixed question of

law and fact," this Court gives deference to the trial court's factual findings but reviews statutory

interpretations and legal conclusions *de novo*.  *Young v. Commonwealth*, 297 Va. 443, 450

(2019); *see Ali v. Commonwealth*, 75 Va. App. 16, 33 (2022) ("[Factual] findings may not be

disturbed unless 'plainly wrong' or 'without evidence to support them.'" (quoting *Wilkins v.

Commonwealth*, 292 Va. 2, 7 (2016))).

<u>Appellant's Statutory Right to a Speedy Trial Not Violated</u>

Code § 19.2-243 provides specific time limits "within which an accused must be tried,

absent tolling or other statutory exceptions."  *Brown*, 75 Va. App. at 406.  As applicable here, the

statute requires trial to commence for an incarcerated individual within five months from the

preliminary hearing at which the district court found probable cause to believe he committed a

---

time he abducted J.O.  For the purposes of applying Code § 18.2-47(D), it is immaterial that the
Commonwealth did not charge appellant with contempt of court in addition to abduction.

felony.[28]  Code § 19.2-243.  That five-month requirement equates to "152 and a fraction days." *Ballance v. Commonwealth*, 21 Va. App. 1, 6 (1995).

This Court has recently concluded that the COVID-19 pandemic qualifies as a "natural disaster" and thus justifies the tolling of statutory speedy trial deadlines provided in the emergency orders executed between March 16, 2020, and May 27, 2022.  *See Ali*, 75 Va. App. at 31-33; *Brown*, 75 Va. App. at 402-03, 414.[29]  Accordingly, the statutory speedy trial clock did not run between the initial emergency order issued on March 16, 2020, and the commencement of appellant's trial on July 28, 2021.

The remaining period of time for this Court to consider then is that between appellant's preliminary hearing on May 3, 2019, and the start of the pandemic-related tolling on March 16, 2020.[30]  For the reasons stated below, only 121 days during that time are chargeable to the Commonwealth for statutory speedy trial purposes; the remainder is tolled under the provisions of Code § 19.2-243.

Generally, the time between the preliminary hearing and initial trial date "counts against the Commonwealth for speedy trial purposes."  *Palmer v. Commonwealth*, No. 0885-21-1, slip op. at 11 (Va. Ct. App. Aug. 9, 2022) (citing *Turner v. Commonwealth*, 68 Va. App. 72, 79 (2017)).  However, a "continuance granted on the motion of the accused or his counsel" tolls the

---

[28] The period of time between the arrest of the accused and the preliminary hearing has no bearing on the accused's statutory speedy trial rights under Code § 19.2-243, although it is considered as part of a constitutional speedy trial claim.

[29] Both cases reference the several enumerated exceptions to the five-month time limit contained in Code § 19.2-243, including "failure to try the accused . . . caused . . . [b]y a natural disaster, civil disorder, or act of God."

[30] As mentioned previously, "appellant's statutory speedy trial deadline was tolled due to the COVID-19 emergency, [but] his constitutional speedy trial rights remained in effect and were not suspended." *Brown*, 75 Va. App. at 404.  This Court reviews separately the effect of those orders in the context of appellant's constitutional speedy trial claim.

statutory speedy trial clock. Code § 19.2-243. Here, the Commonwealth acknowledges that the twenty days from appellant's preliminary hearing in the JDR court on May 3, 2019, to the first appearance in the trial court on May 23, 2019, count toward the speedy trial deadline. Conversely, the adjournment from May 23 to May 31, 2019, made for purposes of setting a trial date and appointing new counsel at appellant's request, does not count towards the speedy trial deadline. *See* Code § 19.2-243; *see also Palmer*, slip op. at 12 ("[T]his Court has charged to a defendant the delay between appointing new counsel for the defendant and the new trial date." (citing *Ballance*, 21 Va. App. at 6)).

On May 31, 2019, the trial court set a trial date of September 23, 2019. Only 101 days of this period are chargeable to the Commonwealth because appellant requested a continuance on September 9, 2019, which the trial court granted, thus stopping the speedy trial clock. *See Palmer*, slip op. at 12 ("Code § 19.2-243's restrictions do not apply to speedy trial deadline calculations when a defendant or his counsel requests the continuance, concurs to the Commonwealth's continuance motion, or fails to timely object to that motion.").

Based on appellant's September 9 continuance request, the trial court set a new trial date of January 13, 2020, to which appellant did not object.[31] Appellant requested another continuance in December 2019, which the trial court granted on January 8, 2020, and the case was adjourned for trial on March 30, 2020. That period of time is also tolled under Code § 19.2-243 because appellant made the adjournment request.[32] As already discussed above, the Supreme Court issued its first emergency order on March 16, 2020, and the statutory

---

[31] Indeed, the CCO from September 9 clearly shows that appellant requested a continuance due to witness unavailability and waived speedy trial for that adjournment.

[32] The CCO from January 8 reveals that appellant requested a continuance in order to prepare for trial and that speedy trial was waived for that adjournment.

speedy trial deadlines were tolled from that date through the start of appellant's trial in July 2021.

Because only 121 days of Code § 19.2-243's allotted 152-and-a-fraction days ran, the trial court did not err in concluding that appellant's statutory right to a speedy trial was not violated.

Appellant's Constitutional Right to a Speedy Trial Not Violated

In contrast to the statutory right to a speedy trial, the constitutional right to a speedy trial under the Sixth Amendment of the United States Constitution "is governed by a balancing test that is not tied inextricably to calendar dates." *Brown*, 75 Va. App. at 406-07 (citing *Barker v. Wingo*, 407 U.S. 514, 521 (1972)). The four factors of that test are: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. An appellant must establish that those factors, when considered together, "weigh in his favor." *Ali*, 75 Va. App. at 35 (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)).

1. Speedy Trial Factors Under *Barker*

a. Length of Delay

This Court first considers the length of delay, measured from the time of arrest to commencement of trial. *See Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978). In the absence of delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors." *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994) (quoting *Barker*, 407 U.S. at 530). Whether a delay qualifies as presumptively prejudicial "necessarily depend[s] upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. However, this Court has previously found that delays of one year or more are presumptively prejudicial. *See Ali*, 75 Va. App. at 35-36; *Miller v. Commonwealth*, 29 Va. App. 625, 633 (1999); *see also Doggett v.*

*United States*, 505 U.S. 647 (1992) (finding that a delay approaching one year is presumptively prejudicial).

Here, where the time between appellant's arrest and trial exceeds two years, the length of delay is presumptively prejudicial and triggers consideration of the other *Barker* factors.

### b. Reasons for Delay

Under the next factor—the reasons for delay—a court must make two separate determinations: first, what portions of the delays are attributable to the Commonwealth, and second, what portion of the delays attributable to the Commonwealth are justifiable. *See Ali*, 75 Va. App. at 36; *Fowlkes*, 218 Va. at 767. Appellant claims that his case was delayed by 383 days from his arrest to trial and that nearly 300 of those days are attributable to the Commonwealth.

A delay is *not* attributable to the Commonwealth if it is requested by the defendant,[33] if the defendant "concurred" in the delay,[34] or if the defendant "made clear that he was not ready for trial."[35] But "[a]lthough any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, 'different weights should be assigned to different

---

[33] *See Price v. Commonwealth*, 24 Va. App. 785, 790-91 (1997).

[34] *Arnold v. Commonwealth*, 18 Va. App. 218, 223 (1994). This Court recognizes, however, that the "mere failure of the accused to object to a particular continuance does not mean that the relevant time is attributed to him and excluded from the constitutional calculation." *Ali*, 75 Va. App. at 38 (citing *Fowlkes*, 218 Va. at 768-69). Rather, the defendant must affirmatively agree to a continuance before the specified period of delay may be attributed to him as a "concurrence."

[35] *Heath v. Commonwealth*, 32 Va. App. 176, 182 (2000) (en banc) ("During the delay occasioned by the Commonwealth's motion for a blood test, [defendant]'s motion for a psychiatric examination was granted, necessitating a trial delay until he stood ready to proceed."), *aff'd*, 261 Va. 389 (2001); *see also Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) (holding that delays caused by defense counsel are charged against the defendant); *Stephens v. Commonwealth*, 225 Va. 224, 233 (1983) (finding defendant responsible for delay where his filing a motion to suppress "necessitated a slowdown of the judicial process").

reasons' for delay." *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531). The three categories of fault for delay attributable to the Commonwealth are: (1) "deliberately improper" delay, (2) "merely negligent" delay, and (3) "valid and unavoidable" delay. *Id.*

Deliberate delay[36] "should be weighed heavily" against the Commonwealth, whereas negligence[37] should receive less weight. *Id.* (quoting *Barker*, 407 U.S. at 531); *see also Jefferson v. Commonwealth*, 23 Va. App. 652, 659 (1996) ("Even if we attributed the delay solely to the Commonwealth's lack of diligence in following the defendant's case, this reason for the delay weighs less than a deliberate or malicious motive on the part of the prosecutor."). "[A] reason deemed 'valid' fully 'justif[ies] appropriate delay'" and thus does not weigh in appellant's favor. *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531).

Many routine periods of delay in a criminal case, such as the time between a defendant's arrest and the preliminary hearing, can be attributed to the Commonwealth "in the ordinary course of the administration of justice." *See id.* at 37. When "no evidence indicates that the prosecution caused the delay either intentionally or negligently," such delay "in the ordinary course" is deemed "valid and unavoidable," thus making it fully justified. *Id.* at 45. Similarly, this Court has recently held that pandemic-related delays[38] attributed to the Commonwealth are "valid, unavoidable, and outside the Commonwealth's control." *Id.* Accordingly, such delays are deemed fully justified. *See id.* at 44 (finding that the COVID-19 pandemic "made it unsafe

---

[36] Includes delay "caused with an intent to 'hamper the defense' or harass the defendant." *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531).

[37] Includes "negligence in scheduling, understaffing of a prosecutor's office, or 'overcrowd[ing of the] courts.'" *Ali*, 75 Va. App. at 42 (quoting *Barker*, 407 U.S. at 531).

[38] These include the deliberate efforts of Virginia's judicial system "to balance public health with the administration of justice." *Ali*, 75 Va. App. at 45.

for all witnesses and other trial participants to come to court for a period of time, rendering them justifiably absent").

*Apportionment of Delay*

This Court's review of the record in the light most favorable to the Commonwealth reveals that a large portion of delay between appellant's arrest on November 28, 2018, and his trial on July 27, 2021, is attributable to appellant based on his stand-alone and joint requests for continuances.

The forty-eight days between appellant's arrest on November 28, 2018, and the first scheduled date for a preliminary hearing on January 14, 2019, are attributable to the Commonwealth. The following 109 days—between January 14 and the preliminary hearing finally occurring on May 3, 2019—are not attributable to the Commonwealth because the parties made a joint request for a continuance on January 14, 2019, and appellant then made two additional requests for a continuance on February 21, 2019, and March 28, 2019.

Between appellant's preliminary hearing on May 3, 2019, and his first scheduled trial date on September 23, 2019, only 121 days are attributable to the Commonwealth for constitutional speedy trial purposes.[39] None of the 203 days between appellant's request for a continuance on September 9, 2019, and the trial date set for March 30, 2020, are attributable to the Commonwealth.[40] Because appellant requested a continuance on April 1, 2020, only two

---

[39] The eight days of delay from May 23, 2019, to May 31, 2019, resulted from appellant's request for new counsel; the fourteen days between September 9, 2019 and September 23, 2019 are not attributed to the Commonwealth because appellant requested a continuance on September 9.

[40] The case was adjourned on September 9, 2019, at appellant's request, to January 13, 2020. Appellant then made another adjournment request on December 30, 2019, and the case was continued until March 30, 2020. *See Heath*, 32 Va. App. at 182; *Brillon*, 556 U.S. at 90-91; *Stephens*, 225 Va. at 233-34.

days of the total sixty-three days between March 30, 2020, and June 1, 2020, are attributable to the Commonwealth.[41]

On May 27, 2020, the case was again continued, at the Commonwealth's request, to August 3, 2020. The sixty-three days from June 1, 2020, to the new trial date in August are attributable to the Commonwealth because appellant's April 1 continuance only waived speedy trial until June 1. The subsequent adjournment from August 3, 2020, to February 1, 2021, is not attributable to the Commonwealth because appellant requested new counsel, asserted his right to a jury trial, and explicitly waived speedy trial for those 181 days. On October 1, 2020, the trial court informed the parties that it could no longer hold a jury trial on February 1, 2021, due to court congestion caused by the COVID-19 pandemic. As a result, the trial was rescheduled to May 5, 2021.

However, on April 19, 2021, both parties requested a joint continuance until June 28, 2021. Thus, only the seventy-seven days between February 1, 2021 (the date appellant's explicit speedy trial waiver expired) and April 19, 2021 (the date the parties jointly agreed to adjournment) are attributable to the Commonwealth. The remaining seventy days—from April 19, 2021, to June 28, 2021—are deemed waived by the April 19 joint continuance. Accordingly, the final period of delay attributable to the Commonwealth is the thirty days between June 28, 2021, and the start of appellant's trial on July 28, 2021, which resulted from the Commonwealth's April 23, 2021 motion to continue.

*Justification for Delay Attributed to Commonwealth*

In accordance with the determinations made above, 171 days of the total 341 days attributed to the Commonwealth fall squarely within the ordinary administration of justice.

---

[41] In the April 1 CCO granting a joint continuance to June 1, 2020, appellant's counsel checked the box indicating a waiver of speedy trial time for that adjournment.

Those periods of delay, listed below, are deemed valid and fully justified because no evidence shows that the Commonwealth acted improperly:

- Forty-eight days from November 28, 2018, to January 14, 2019[42];

- 121 days from May 3, 2019, to September 9, 2019[43];

- Two days from March 30, 2020, to April 1, 2020.

The next two periods of delay attributed to the Commonwealth amount to 140 days and are justified as pandemic-related delays based on this Court's viewing of the record in the light most favorable to the Commonwealth and a lack of evidence that the Commonwealth behaved inappropriately. Specifically, this Court determines that (1) the sixty-three days of delay between June 1, 2020, and August 3, 2020, resulted from then-present health and safety concerns relating to COVID-19, and (2) the seventy-seven days of delay between February 1, 2021, and April 19, 2021, resulted from court congestion caused by the COVID-19 pandemic.[44]

As a result of the foregoing calculations, only the final thirty days leading up to appellant's trial—from June 28, 2021, to July 28, 2021—are not justified because the Commonwealth acted negligently in selecting the June 28 trial date before confirming the availability of all necessary witnesses for that date.[45] Therefore, only those thirty days of delays count in favor of appellant.

---

[42] The delay between appellant's arrest and the first scheduled date for his preliminary hearing.

[43] The delay between appellant's preliminary hearing and his scheduled trial date. Appellant's motion for a continuance on September 9 cut off the Commonwealth's responsibility early.

[44] Although the trial court sua sponte vacated the February 1, 2021 trial date in October 2020 and rescheduled the trial for May 5, 2021, appellant's August 3, 2020 waiver of speedy trial time extended until February 1, 2021.

[45] Although the Commonwealth requested a continuance on April 23, 2021, based on witness unavailability, the parties' prior joint continuance on April 19, 2021, tolled speedy trial

c.  Assertion of Right

The third factor in the constitutional speedy trial calculus requires this Court to consider whether, and how, appellant asserted his right to a speedy trial.  Despite having been incarcerated for over one year, appellant did not assert his right to a speedy trial until March 25, 2020, after the trial court issued a memorandum on March 16, 2020, suspending trials for thirty days and setting this case for status update on May 21, 2020.[46]

The trial court heard argument from both parties on March 30, 2020, regarding the speedy trial issues, after which it set the case for a bench trial to begin on April 6, 2020.  Only four days after that decision—and four days before trial—appellant agreed to a joint continuance until June 1, 2020, even though that date went beyond the statutory speedy trial cut-off date of April 15, 2020.[47]  Appellant also agreed to further continuances from August 3, 2020,[48] to February 1, 2021, and from April 19, 2021,[49] to June 28, 2021.

Although the trial court granted the Commonwealth's April 23 continuance request over appellant's objection, appellant did not assert his rights again until July 27—the day before trial

_____

until June 28, 2021, regardless of when the Commonwealth made its stand-alone request for adjournment.

[46] These facts are extremely similar to those in *Ali* where appellant did not assert his right "until after the Supreme Court had already begun entering judicial emergency orders restricting the ability of circuit courts to conduct jury trials."  75 Va. App. at 46.  This Court ultimately concluded in *Ali* that appellant's constitutional right to a speedy trial was not violated.

[47] At the March 30 hearing, appellant agreed with the trial court's determination that April 15 was the "expiration of the five months" permitted for statutory trial purposes under Code § 19.2-243.

[48] When appellant asserted his right to a jury trial and acknowledged before the trial court that such request would delay his trial until February 2021.

[49] When appellant agreed to another joint continuance.

- 38 -

commenced—when he filed a motion to dismiss for a violation of his constitutional right to a speedy trial.

### d. Prejudice

As to the final factor—prejudice—the constitutional speedy trial right aims to protect three separate interests: "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired." *Kelley*, 17 Va. App. at 546 (citing *Barker*, 407 U.S. at 532). "The most important of these interests is the third one." *Ali*, 75 Va. App. at 47.

When "the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,'" appellant's speedy trial claim will fail "as a matter of course however great the delay" unless appellant can show "specific prejudice" to his defense (the third interest) or "some degree of prejudice for one of the first two interests." *Ali*, 75 Va. App. at 47-48 (quoting *Doggett*, 505 U.S. at 656). On the other hand, "[a] delay caused by governmental negligence 'occupies the middle ground.'" *Id.* at 47 (quoting *Doggett*, 505 U.S. at 656-57). However, "[t]o prove even generalized prejudice based on one of the first two interests . . . a defendant must establish a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial." *Id.* at 48.

With regard to the first two interests, appellant only mentions in passing that the 383 "days of incarceration he served . . . are not attributable to any delay or continuance on his part."[50] Appellant's allegation of prejudice, however, rests more heavily on the third interest:

---

[50] As explained previously, this Court determines that 341 days of appellant's incarceration are attributable to the Commonwealth, only thirty days of which resulted from the Commonwealth's negligence, whereas 624 days resulted from speedy trial waivers caused by appellant's actions.

that he was "greatly inhibited in presenting a defense" because his parents "were unable to come back to the United States from Bulgaria due to age and travel restrictions."

"To prove specific prejudice under the third interest . . . a defendant must show 'in what specific manner' factors such as missing witnesses . . . 'would have [impaired or] aided the defense.'" *Ali*, 75 Va. App. at 49 (quoting *United States v. Medina*, 918 F.3d 774, 782 (10th Cir. 2019)); *see Kelley*, 17 Va. App. at 547 (requiring "at least . . . a factual basis for believing" that the loss of a witness's testimony might have "adversely affected the defense"); *Beachem v. Commonwealth*, 10 Va. App. 124, 134 (1990) (holding that appellant's claim that his defense was impaired due to missing alibi witnesses was "sheer speculation" in part because he provided "no details" about when they moved or how he attempted to locate them).

Here, appellant merely claims that his parents "were set to testify in his defense to refute Ms. Letyvska's allegations" without offering any proof as to the details of that testimony and how it would have impacted his defense. This bare assertion is not sufficient on its own to establish that appellant actually suffered any prejudice to his defense.

## 2. Overall Assessment of *Barker* Factors

This Court first determined that the delay of 965 days from appellant's November 2018 arrest to his July 2021 trial was presumptively prejudicial under the first *Barker* factor, thus warranting consideration of the other three factors. Now, in weighing and balancing all the factors together, this Court finds their sum total rebuts the presumption and the evidence as a whole does not support appellant's claim that his constitutional right to a speedy trial was violated. *See Brown*, 75 Va. App. at 410 (explaining all four *Barker* factors are "related" and "must be considered together with such other circumstances as may be relevant" (quoting *Barker*, 407 U.S. at 533)).

Here, the majority of the delay—624 days—resulted from appellant's waivers of speedy trial, both explicitly and by operation of law.[51]  Conversely, only 341 days of delay are attributable to the Commonwealth, the vast majority of which is justified based on pandemic-related reasons or the ordinary administration of justice.  Such delays caused by "valid and unavoidable" reasons are not weighed against the Commonwealth when balancing the *Barker* factors.  *See Ali*, 75 Va. App. at 42, 45, 51-52; *Barker*, 407 U.S. at 531.

Moreover, there is no evidence in the record that the Commonwealth should be faulted for any period of delay other than the thirty days between June 28, 2021, and July 28, 2021, which were the result of the Commonwealth's negligence in determining witness availability. This fact does weigh against the Commonwealth to a degree, but not enough for this Court to find a violation of appellant's rights where the Commonwealth acted neither deliberately nor with bad faith to cause the delay.  *See Strunk v. United States*, 412 U.S. 434, 436 (1973) ("Unintentional delays . . . are among the factors to be weighed less heavily than intentional delay, calculated to hamper the defense."); *Jefferson*, 23 Va. App. at 659; *Ali*, 75 Va. App. at 42.

Similarly, the third *Barker* factor—assertion of the right to a speedy trial—weighs only moderately in appellant's favor due to the timing and frequency of his assertions.  Despite having already spent sixteen months in jail, appellant did not assert his right to a speedy trial until March 25, 2020, only after the Supreme Court issued its first emergency order and the trial court administratively adjourned this case to a status date on May 21, 2020, in connection with the COVID-19 pandemic.  *See Ali*, 75 Va. App. at 46 (finding that appellant's "delay in asserting the right weighs against finding a violation" because this factor "deserves less weight than that to

---

[51] For example, joint continuance requests are treated the same as adjournment requests made solely by appellant for the purposes of speedy trial calculations.  *See Price*, 24 Va. App. at 790-91; *Arnold*, 18 Va. App. at 223.

which it would have been entitled if [appellant] had raised it earlier, at a time before the pandemic severely limited the possibility that [appellant] could be tried promptly").

After hearing argument on the speedy trial issue on March 30, 2020, the trial court adjourned the case to April 6, 2020, for a bench trial, and appellant agreed with the trial court's determination that April 15, 2020, marked the "expiration of the five months" permitted for statutory trial purposes under Code § 19.2-243. Yet, only four days after that decision, appellant agreed to a joint continuance until June 1, 2020.[52] Appellant also made subsequent agreements to additional adjournments totaling 312 days.[53] And despite objecting to the Commonwealth's continuance request on April 23, 2021, appellant did not file another motion to dismiss on speedy trial grounds until July 27, 2021, the day before trial.

Although waivers of speedy trial time resulting from appellant's decisions do not entirely excuse the Commonwealth from its constitutional obligations, they do assist this Court in weighing the *Barker* factors to assess whether appellant's constitutional right to a speedy trial was violated. *See Ali*, 75 Va. App. at 46 (permitting a court to "weigh the frequency and force" of appellant's objections to delay (quoting *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987))); *see also Commonwealth v. Jerman*, 263 Va. 88, 94 (2002) (holding that the "perceived futility" of objecting "does not excuse" a defendant from doing so because of their duty to create

---

[52] *See Palmer*, slip op. at 11-12 ("[A] defendant's agreement with or failure to object to a court setting a trial date outside the statutory speedy trial period 'constitutes a continuance of the trial date under Code § 19.2-243(4).'" (quoting *Heath*, 261 Va. at 394)). *Compare Baker v. Commonwealth*, 25 Va. App. 19, 20-25 (reasoning that supplying the trial court with available trial dates was not the defendant concurring to the requested continuance), *aff'd on reh'g en banc*, 26 Va. App. 175 (1997).

[53] Sixty-one days from April 1, 2020, to June 1, 2020; 181 days from August 3, 2020, to February 1, 2021; and seventy days from April 19, 2021, to June 28, 2021. These periods of delay are roughly equal to the total amount of time attributed to the Commonwealth throughout the entire case for justifiable reasons (not including the thirty days due to negligence).

a record for appeal).  In doing so, this Court finds that appellant's continued acquiescence to adjournments since April 1, 2020, limits the weight given to appellant's assertion of his right.

Finally, appellant did not demonstrate that he suffered prejudice attributable to the above-described delays.  Appellant's primary argument regarding prejudice is the alleged impairment of his defense due to the missing testimony from his parents.  Appellant failed, however, to show the requisite "specific prejudice" because he did not proffer what testimony his parents would have given nor how such testimony would have assisted in his defense.  *See Tynes v. Commonwealth*, 49 Va. App. 17, 21-22 (2006) (holding that appellate court cannot determine prejudicial effect of excluded testimony without proffer of expected testimony).  Specifically, appellant did not allege that the testimony of his parents or any other witness would corroborate his version of events or contradict the testimony of Ms. Letyvska—which was corroborated by Mr. Sobeck's testimony—regarding March 24, 2018, the date of the incident underlying appellant's convictions.

Appellant's claim of prejudice due to his incarceration is also unpersuasive where he simply claims that a long portion of that incarceration resulted from periods of delay attributable to the Commonwealth.  As already determined above, only thirty days of the total 341 days attributed to the Commonwealth between defendant's arrest and trial are not justified due to the Commonwealth's negligent scheduling.  Therefore, even assuming without deciding that appellant's claim constitutes proof of generalized prejudice for a "particularly prolonged or restrictive period of incarceration," it is nevertheless insufficient to support a finding that appellant's constitutional right to a speedy trial was violated when the collective weight of the *Barker* factors indicates otherwise.  *See Ali*, 75 Va. App. at 51-52 (finding that appellant did not prove the requisite prejudice to establish a constitutional speedy trial violation where the period of delay chargeable to the Commonwealth was valid under *Barker*); *Doggett*, 505 U.S. at 656-57.

- 43 -

For the foregoing reasons, this Court finds that appellant has not established a violation of his constitutional right to a speedy trial under the *Barker* four-factor balancing test. *See Brown*, 75 Va. App. at 407 ("On appeal, a defendant must establish that on balance, the factors weigh in his favor." (quoting *Ali*, 75 Va. App. at 35)).

### D. Appellant's Fourth Assignment of Error: The Trial Court Erred in Denying Appellant's Motion to Strike the Charge of Abducting His Wife

In his fourth, and final, assignment of error, appellant argues that the trial court erred in finding the evidence sufficient as to the charge of abducting Ms. Letyvska where the act of abduction was merely incidental to appellant's assault of her. This Court declines to consider the merits of this argument because appellant did not preserve it for appellate review.

Rule 5A:18 precludes appellate review of an objection not "stated with reasonable certainty at the time of the ruling" by the trial court. This procedural default principle specifically requires "that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *see Clark v. Commonwealth*, 30 Va. App. 406, 411-12 (1999) (preserving one specific argument as to the sufficiency of the evidence does not allow argument on appeal regarding other sufficiency issues not raised at trial).

Appellant challenged at trial the sufficiency of the evidence regarding the charge of abducting Ms. Letyvska in his motion to strike and renewed motion to strike. However, he did so only on the grounds that Ms. Letyvska's testimony was not credible and that the evidence did not prove appellant's identity or his intent to deprive Ms. Letyvska of her liberty. Appellant did not argue before the trial court, as he does now on appeal, that the evidence was insufficient because it was merely incidental to the separate crime of assault against Ms. Letyvska.

Therefore, because appellant deprived the trial court of an opportunity to consider the specific grounds of the objection he now presents on appeal, this issue is not preserved for

review by this Court.  Accordingly, this Court affirms appellant's conviction for abducting

Ms. Letyvska.

### III.  CONCLUSION

For the foregoing reasons, this Court reverses and vacates appellant's felony conviction

for the abduction of J.O. and affirms appellant's remaining convictions.[54]

*Affirmed in part, reversed and vacated in part.*

---

[54] Because the parties have not briefed the matter of appropriate remedy with regard to appellant's second assignment of error, this Court need not decide whether the provisions of Code § 18.2-47(D) set out a lesser-included offense or a separate offense.  Therefore, this Court offers no opinion as to whether, and by what means, the Commonwealth may initiate further proceedings against appellant for the abduction of J.O. if so inclined.